

IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| CYPHER ENTERPRISES, LLC § § *Plaintiff,* § § v. § § HASHFAST TECHNOLOGIES, LLC, § HASHFAST, LLC § § *Defendants.* § | CIVIL ACTION NO. 4:14-CV-00243-A |

## PLAINTIFF'S ORIGINAL COMPLAINT

Cypher Enterprises, LLC ("Plaintiff") files this action against HashFast Technologies, LLC and HashFast, LLC (collectively, "Defendants") for their willful breaches of contract and steadfast refusal to refund Plaintiff the money it paid Defendants in United States dollars and Bitcoins, a digital currency, for promised computer hardware which was *never* delivered.

### PARTIES

1. Plaintiff Cypher Enterprises, LLC is a limited liability company organized under Texas law which maintains its principal place of business in Southlake, Texas. The members of the LLC and their residences are as follows:

| Name | State of Residence |
|---|---|
| Jason Eric Badua | Hawaii |
| Robert S. Briggs | Minnesota |
| Matthew William Carson | Missouri |
| Jonathan Kohn | Texas |
| Daniel Murtha | Missouri |
| Thomas Dominick Salvatore | New York |

2. Defendant HashFast Technologies, LLC is a limited liability company organized under California law with its principal place of business in San Jose, California. It has not identified

its members for purposes of diversity jurisdiction. Process should be served on CT Corporation System, 818 West Seventh Street, 2nd Floor, Los Angeles, California 90017.

3.     Defendant HashFast, LLC is a limited liability company organized under Delaware law with its principal place of business in San Jose, California. It has not identified its members for purposes of diversity jurisdiction. Process should be served on The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

4.     Pursuant to 28 U.S.C. § 1332, this Court has original subject-matter jurisdiction over this action because: (a) Plaintiffs and each of the Defendants are citizens of different states; and (b) the amount in controversy as to each of the Shareholder Defendants exceeds $75,000, exclusive of interest and costs.

5.     This Court has personal jurisdiction over each of the Defendants because Defendants are juridical entities that regularly transact or solicit business in this State, derive substantial revenue from goods used or services rendered in this State, or maintain relations or engage in any other persistent course of conduct in this State sufficient to afford a basis for the exercise of personal jurisdiction. At all material times, Defendants engaged in business in the Northern District of Texas and actively, purposefully, willfully, intentionally, systematically (and not in an isolated manner) conducted business in the Northern District of Texas. Defendants products—computer hardware—are available for purchase by Texas residents on its website, www.hashfast.com.

6.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 a substantial part of the events or omissions giving rise to the claims in this action occurred in this District. This District is where the Plaintiff resides.

## **BACKGROUND**

*What is a Bitcoin?*

7. Bitcoins ("BTC") are essentially digital currency, created and exchanged over a peer-to-peer payment network. The BTC network is decentralized, with no authority overseeing its operation; it uses open-source encryption software for transactions. Every BTC transaction is permanently recorded and is maintained in a transparent public ledger. The original technical paper describing BTC in detail can be found at http://bitcoin.org/bitcoin.pdf.

8. BTC payment transactions are processed by a network of private computers distributed throughout the world which, typically, have been specially configured for processing BTC transactions. These computers are commonly referred to as "Bitcoin computers." The operators of such computers are known as "miners". Miners are partially compensated for the work they perform by receiving fees for the BTC transactions that they process through their BTC computers.

9. The BTC system also incentivizes miners to process transactions by allowing them to create new BTC for themselves based on the number of "blocks" discovered. Blocks are files containing data regarding BTC transactions that have yet to be recorded in the public ledger. The process of discovering a block involves calculating an algorithm known as SHA256 hash over and over again until the miner finds an input that matches an expected output. The chance that a miner will discover a given block, and thereby claim its BTC "reward" before another miner, is based on the miner's "hash rate" relative to the total hash rate of all BTC miners on the network. This incentive creates an inherent competitive environment in which miners seek to increase their rate of processing.

10. The difficulty of BTC mining is continually adjusted based on the rate at which blocks are created. Thus, as competition increases, so does the difficulty in processing. As a result, a BTC mining computer continually becomes less valuable over time, as it becomes relatively less efficient at processing BTC blocks. Eventually, without upgrading technology, the electricity required for processing will cost a miner more than the BTC computer is able to generate.

11. As BTC has increased in popularity, technology companies have sprung up to serve the BTC mining market, developing specialized computers to conduct such mining. Defendants operate one such company and sell this hardware at www.hashfast.com.

*Plaintiff's Orders with Defendants*

12. Plaintiff is the legal assignee of five different orders placed with HashFast (collectively, the "**Orders**").[1]

13. Originally, Order No. 616 was placed by a gentleman named Matthew Leong, who, in writing, has assigned all rights, remedies, causes of action, and interest in Order No. 616 to Plaintiff.

14. The remaining orders were placed by two other gentlemen—Jason Badua and Thomas Salvatore. Mr. Badua and Mr. Salvatore are members of Plaintiff, and like Mr. Leong, have assigned all rights, remedies, causes of action, and interest in the orders to Plaintiff.

*HashFast Makes Promises*

15. In July 2013, Defendants, through various representatives, began posting on a popular BTC forum known as "Bitcoin Talk", located at www.bitcointalk.org. Defendants made several posts about their soon-to-be-launched BTC mining computer.

16. Defendants engaged in a wide range of promotion via Bitcoin Talk, including (1) inviting members to visit their offices, (2) announcing partnerships and supply arrangements, and (3)

---

[1] *See* **Ex. A** (HashFast Order Nos. 616, 991, 1981, 2176, and 2354) (001-009).

stating that their order process would be fully transparent. For example, in late August, Defendants purported to "announce some specs for [HashFast's] mining chip," going so far as to attach a letter from a third party partner. Defendants said that they would also be open and transparent about their sales queue.

17. Defendants publicly posted statements assuring shipments would be made in late October 2013. On August 5, 2013, Defendants stated "We will be shipping [the mining product] in October."[2]

18. On August 8, 2013, Defendants stated that "HashFast is launching sales of the Baby Jet [mining product]," and further stated "Shipments begin: October 20th-30th, in order of purchase."[3]

19. Defendants' website claims HashFast is a "leader in Bitcoin mining technology."[4]

*Plaintiff Places Orders*

20. After reviewing the product information provided on the Site for HashFast's "Baby Jet" BTC mining computer, including the product's technical specifications and HashFast's stated delivery dates, Plaintiff decided to purchase Baby Jet hardware.

21. In choosing the Baby Jet, Plaintiff relied on Defendants' representations and warranties on its website and Bitcoin Talk posts, including Defendants' claim that it had units of the Baby Jet "in stock," with shipments starting "October 20-30."

22. Ultimately, Plaintiff placed the Orders. Plaintiff paid for Order No. 616 in USD ($6,018.50); Plaintiff paid the rest in BTC (218.87162179 BTC).

---

[2] **Ex. B** (Screenshot of https://bitcointalk.org/index.php?topic=262052.msg2869016#msg2869016) (010-017).

[3] **Ex. C** (Screenshot of https://bitcointalk.org/index.php?topic=270384.msg2894615#msg2894615). (018-024).

[4] *See* http://hashfast.com/about-us/.

23. Defendants represented that refunds would be paid in BTC. In a public post on Bitcoin Talk, Defendants advised that "Orders are taken in BTC, in the unlikely event we get to refunds they will be given in BTC."[5]

24. Following Plaintiff's Orders, Defendants continued to reaffirm that it would make deliveries in October. On August 11, 2013, Defendants stated in a post on Bitcoin Talk: "[w]e understand the importance of schedule . . . and we're confident we can deliver."[6]

25. Defendants could not deliver the hardware on time. Eventually, Defendants promised the BabyJet computers would be shipped no later than December 31, 2013. That date has come and gone, and Defendants failed to deliver the already overdue products to Plaintiff. Plaintiff demanded a full refund in BTC and United States dollars on January 13, 2014. Defendants have yet to respond or refund Plaintiff a single penny (or BTC).

## CAUSES OF ACTION

**COUNT ONE – BREACH OF CONTRACT**

26. Plaintiff incorporates by reference paragraphs 1-25 as if fully set forth herein.

27. Plaintiff and Defendants entered into a valid, enforceable contract (the Orders). Defendants were aware of the time-sensitive nature of delivery and made specific assurances to Plaintiff regarding the delivery deadline and refund policy. Plaintiff performed by tendering payment, and Defendants have materially breached the contract for failing to deliver the hardware

---

[5] **Ex. D** (Screenshot of https://bitcointalk.org/index.php?topic=270384.msg2903338#msg2903338). (025-033).

[6] **Ex. E** (Screenshot of https://bitcointalk.org/index.php?topic=262052.msg2908364#msg2908364). (034-040).

timely (or at all). Plaintiff has been damaged as a result of Defendants' material breach of contract and seeks all available damages in law and equity, including recission (in the alternative).

**COUNT TWO – MONEY HAD & RECEIVED**

28. Plaintiff incorporates by reference paragraphs 1-25 above as if fully set forth herein.

29. Defendants have and continue to hold money (USD and BTC) belonging to Plaintiff in both equity and good conscience. As a result, Plaintiff seeks all available actual damages—the money received and held by Defendants which belongs to Plaintiff.

**COUNT THREE – COMMON LAW FRAUD**

30. Plaintiff incorporates by reference paragraphs 1-25 as if fully set forth herein. Defendants made numerous representations to Plaintiff regarding the delivery dates and refund policy in connection with Baby Jet hardware as alleged above. Defendants advised that "Orders are taken in BTC, in the unlikely event we get to refunds they will be given in BTC." On August 5, 2013, Defendants stated "We will be shipping [the mining product] in October." On August 8, 2013, Defendants stated that "HashFast is launching sales of the Baby Jet [mining product]," and further stated "Shipments begin: October 20th-30th, in order of purchase." On August 11, 2013, Defendants stated in a post on Bitcoin Talk: "[w]e understand the importance of schedule . . . and we're confident we can deliver."

31. These representations were material and false.

32. When Defendants made these representations, they knew they were false or made them recklessly, as a positive assertion, and without knowledge of the truth. Defendants made those representations with the intent Plaintiff act and/or rely on them. Plaintiff relied on these representations and as a result, have been injured and seek all available damages in law and equity.

## COUNT FOUR – VIOLATIONS OF THE TEXAS DTPA "LAUNDRY LIST"

33. Plaintiff incorporates by reference paragraphs 1-25 as if fully set forth herein. Plaintiff is a consumer and Defendants can be sued under the Texas Deceptive Trade Practices Act. Defendants committed false, misleading, and/or deceptive acts and/or practices as specifically enumerated in the "laundry list" found in Tex. Bus. & Comm. Code § 17.46(b).

34. Defendants' actions were a producing cause of Plaintiff's damages, and as a result, Plaintiff seeks all available damages in law and equity.

## DAMAGES

35. As a result of Defendants' wrongful acts and/or omissions (as described above), Plaintiff has been damaged and seeks all actual damages, attorneys' fees, court costs, interest, injunctive relief, and equitable relief.

## JURY DEMAND

36. Plaintiff requests a trial by jury and will tender the required jury fee if it has not been paid.

## PRAYER

Plaintiff prays Defendants are cited to appear, answer this lawsuit, and that upon final trial, Plaintiff recovers the following:

1) Actual damages;

2) Injunctive relief;

3) Equitable relief, as pleaded in the alternative;

4) Reasonable and necessary attorneys' fees;

5) Court costs;

6) Pre-judgment and post-judgment interest as allowed by law;

7) Any other relief Plaintiff may be entitled to, whether in law or equity.

Respectfully submitted,

/s/ Robert J. Bogdanowicz III
Robert J. Bogdanowicz III
Texas Bar No. 24064916

DEANS & LYONS, LLP
325 N. Saint Paul Street
Suite 1500
Dallas, Texas 75201
(214) 736-8500 Telephone
(214) 965-8505 Facsimile
rob@deanslyons.com

**ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

On the 25th day of April 2014, a true and correct copy of the above was sent via facsimile, electronic mail, and through the Court's CM/ECF systems to the following:

John Penn
Kelly D. Hine
Erin L. Leu
PERKINS COIE, LLP
500 N. Akard Street, Suite 3300
Dallas, Texas 75201

/s/ Robert J. Bogdanowicz III
Robert J. Bogdanowicz III